IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-02989-WYD

PATRICIA L. HEADLEY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER**

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability insurance benefits ["DIB"] and supplemental security income ["SSI"].  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    <u>BACKGROUND</u>

Plaintiff, born on April 24, 1968, filed applications for DIB and SSI on August 10, 2009, stating that her disability began on June 10, 2009, due to injuries caused by a motor vehicle accident.  (Administrative Record ["AR"], 70, 73, 108, 14, 199, 205.)  She completed the tenth grade and had past relevant work as a still photographer, private housecleaner, and hand packager.  (*Id.* 109, 118, 131, 502-503.)

Plaintiff's claims were initially denied on January 25, 2013 (AR 36, 37), and she requested a hearing before an administrative law judge ["ALJ"].  (*Id.* 41.)  The ALJ

conducted a hearing on September 8, 2011, and issued a "partially favorable" decision dated November 14, 2011. (*Id.* 15–33.)

At step one, the ALJ determined that Plaintiff had not worked since her onset date of June 10, 2009. (AR 24.) At step two, he found that Plaintiff's severe impairments consisted of "residuals of a motor vehicle accident including multiple fractures (pelvis, cervical, right upper extremity, right lower extremity); history of traumatic brain injury with mild neurocognitive disorder and borderline intellectual functioning; adjustment disorder; and headaches." (*Id.*) At step three, the ALJ determined after considering Listings 1.02, 1.03, 1.04, 1.06, 1.07, 11.02, and 11.03 that Plaintiff's severe impairments did not meet or equal any listed impairment. (*Id.* 25.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"]. (AR 26-32.) He found that Plaintiff retained the RFC to perform sedentary level work with additional limitations as follows: occasionally stoop, crouch, kneel, climb stairs and ramps; no ladders/scaffolds/ropes or balancing and crawling; not required to sit more than 30 minutes at one time without the opportunity to stand; no work above shoulder with dominant right upper extremity; no pushing, pulling or extended reaching with the dominant right upper extremity; frequently handle and finger objects; no work at unguarded heights or near unguarded hazardous mechanical equipment; no repetitive up and down or side to side neck movements; not required to understand, remember, and carry out more than simple instructions; and no more than superficial interaction with the public. (AR 26.)

At step four, the ALJ determined that this RFC did not allow Plaintiff to perform her past relevant work. (AR 32.)  At step five, the ALJ found that prior to turning age 50 on March 17, 2011, Plaintiff could have done other work that existed in significant numbers, namely, that of a microfilmer and addressor. (*Id*. 32-33.)  He found that as of her 50th birthday, her age category changed and she was disabled pursuant to Medical Vocational Disability Rule 201.10, 20 C.F.R. §404, Subpart P, Appendix 2. (*Id*. 33.)

The result of the ALJ's partially favorable decision was that Plaintiff did not receive any disability benefits under Title II of the Social Security Act because her insured status expired less than six months before her 50th birthday, the day the ALJ found she was disabled.  Plaintiff asserts that she also did not receive any benefits under Title XVI, due to income and resource issues.

The Appeals Council declined Plaintiff's request for review. (AR 9).  This made the ALJ's decision the agency's final decision for purposes of judicial review.  *See* 20 C.F.R. §§ 404.981, 422.201(a).  Plaintiff then timely commenced this action.

Plaintiff argues that the ALJ erred as a matter of law at step five in failing to reconcile his findings based on vocational expert testimony that conflicted with the *Dictionary of Occupational Titles* ["DOT"], as required by Social Security Ruling 00-04p.  Further, she asserts that the ALJ erred in mechanically applying the Grid Rules which would have directed a finding of disability before Plaintiff's date last insured if the borderline age rule had been considered.  At step three, Plaintiff argues that the ALJ erred by failing to obtain medical testimony as required by Social Security Ruling 96-6p.  Plaintiff also contends that the ALJ's credibility finding was not based on substantial

evidence, and that the ALJ erred in failing to base his findings regarding the weight he gave to various medical opinions in evidence.

II.     ANALYSIS

   A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). Thus, I will not consider the many post-hoc arguments of the Commissioner made in her Response Brief. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

### B.     The Merits of Plaintiff's Arguments

#### 1.     The Step Three Finding

I first address Plaintiff's argument that the ALJ erred at step three in failing to obtain medical expert testimony as required by Social Security Ruling 96-6p.  Plaintiff argues that she should have been found disabled as of the date of her motor vehicle accident (June 9, 2009) due to having a condition that meets or medically equals a musculoskeletal Listing (1.00 *et seq.*), or Listing 12.02 as to her brain injury.  20 C.F.R. § 404, Subpart P, Appendix 1.  Plaintiff asserts that the ALJ had no medical basis to support his finding regard Listings 1.00 et seq., and erred in not considering whether Listing 12.02 was applicable.

Plaintiff effectively concedes that her conditions did not meet any of the musculoskeletal Listings (Pl. Br. 18).  However, at step three, the ALJ must also determine "whether the claimants impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity.'" *Drapeau v. Massanari*, 255 F.3d 1211, 1212 (10th Cir. 2001) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996) (further quotation omitted)).  "An impairment(s) is medically equivalent to a listed impairment. . .if it is at least equal in severity equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 1526(a).

SSR 96-6p provides that "the judgment of a physician designated by the Commissioner on the issue of equivalence on the evidence before the ["ALJ"] must be received into the record as expert opinion evidence and given appropriate weight."  1996

WL 374180, at *3 (July 2, 1996).  "The signature of a State agency medical. . . consultant on [SSA 831, 832 or 833 forms] ensures that consideration by a physician … designated by the Commissioner has been given the question of medical equivalence."  *Id.*  Thus, "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."  *Barnett v. Barnhart,* 381 F.3d 664, 670-671 (7th Cir. 2004) (citing 20 C.F.R. § 404.1526(b)); *see also* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("longstanding policy requires that the judgment of a physician. . . designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] . . . must be received into the record as expert opinion evidence and given appropriate weight.")

In the case at hand, I agree with Plaintiff that the ALJ erred at step three as he did not consult a medical expert to determine whether Plaintiff's impairments medically equaled a listing.  As to Listings 1.02, 1.03, 1.04, 1.06 and 1.07, the ALJ stated that there was "no medical evidence in the record that supports listing level severity."  (AR 25.)  In so finding, he did not discuss any opinions of the medical providers.  Nor did he consult a medical expert.  Similarly, as to headaches, the ALJ stated, "[t]he record in this case does not show that the claimant's headaches satisfy either" Listing 11.02 or 11.03, and no medical expert's opinion was considered.  (*Id.*)

The Commissioner argues, however, that agency policy instructs that the record before the ALJ only need contain the judgment of an agency-designated physician on the issue of medical equivalence.  *See* 20 C.F.R. § 404.1526(c).  She asserts that this obligation can be, and routinely is, fulfilled by the signature of a state agency physician

on forms completed at the initial determination stage of administrative review.  *See* SSR 96-6p, 1996 WL 374180, at *3.

While this may be true, the Commissioner acknowledges that the record in this case contains no such physician signature because the case was adjudicated under a pilot program to test modifications to the disability determination process, which allows a non-physician ("single decisionmaker" or "SDM") to complete the forms and make the determination at the initial stage.  *See* 20 C.F.R. § 404.926(a),(b)(2).  The Commissioner argues that while this may be a technical error, it does not necessitate remand because Plaintiff has not shown she was harmed because Plaintiff did not show how her impairments equaled the Listings.  Further, the Commissioner argues that the ALJ reasonably found from the evidence that Plaintiff's impairments did not meet a listing.

I reject the Commissioner's arguments, and find that a remand is required as to this issue.  It is undisputed that the ALJ obtained no medical judgment or opinion as to medical equivalence.  The SDM is not a medical professional, and such an opinion cannot be relied on as a medical opinion.  *See Cunningham v. Astrue*, No. 09-2535-SAC, 2010 WL 4737795, at *4 (D. Kan. Nov. 16, 2010); *Klobas v. Astrue*, No. 08-CV-02324-REB, 2010 WL 383141, at *5 (D. Colo. Jan. 29, 2010).  Further, to the extent the Commissioner summarizes evidence that she contends supports the ALJ's findings that the Listings were not met, including Listing 12.02, this is post hoc argument which is improper.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

Finally, given the nature and extent of Plaintiff's multiple traumatic injuries, I cannot find that the error was harmless.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145

-7-

(10th Cir. 2004) (error is considered harmless only if it the Court finds that "no reasonable administrative fact finder, following the correct analysis, could have resolved the factual matter in favor of the claimant").[1]  This is particularly true given the fact that the ALJ failed to consider Plaintiff's organic brain dysfunction or listings relevant to same, including Listing 12.02.[2]

I find the opinion in *Carbajal v. Astrue*, No. 10-CV-02025-PAB, 2011 WL 2600984, at *3 (D. Colo. June 29, 2011) instructive on this issue.  There, Judge Brimmer of this Court reversed and remanded a social security case where the ALJ made his step three finding without any opinion from a medical source on the issue of equivalence.  *Id.* at *3.  Judge Brimmer noted, "[a]lthough the Commissioner is correct that the burden is on plaintiff to demonstrate her impairment meets or equals a listing at step three, SSR 96-6p requires the ALJ to develop the record by receiving a medical opinion on this issue."  *Id.*  He also found that the lack of a required medical opinion was not rendered harmless by the ALJ's findings at step four and five.  *Id.*  I agree with this analysis, which I find applies equally to this case.  *See also Hamblen v. Astrue*, No. 11-CV-01491-LTB, 2012 WL 3288950, at *4-5 (D. Colo. Aug. 13, 2013).

---

[1] The Commissioner acknowledges that there is no dispute that Plaintiff experienced significant physical and mental limitations following her car accident.  (Def.'s Resp. Br. at 9.)

[2] Although the ALJ appears to do an analysis of the Part "B" and "C" criteria of the mental health Listings in general (AR 26), he did not mention which mental health Listing he was considering and did no analysis of whether her brain injury medically equaled one.  Plaintiff points to the opinion of Dr. Rosenblum who estimated that Plaintiff had suffered a loss of intellectual ability of 15 IQ points or more.  She asserts that this opinion, in combination with Plaintiff's treating doctor's observations, supported an analysis of Listing 12.02.  This should be considered by the ALJ upon remand.

### 2. The Weighing of the Medical Opinions

I also find error with the ALJ's decision to reject certain of the impairments found by Plaintiff's treating nurse practitioner, Ms. Mitchell. The ALJ indicated that he considered Ms. Mitchell's opinion, who is not an acceptable source, under SSR 06-03p and the relevant regulations. (AR 29.) He gave the opinion "partial weight". (*Id.*) Thus, while the ALJ noted that some of the restrictions in her assessment were consistent with the RFC, he rejected her finding that Plaintiff "should never stoop, crouch, or kneel." (*Id.*) Instead, he found that she could occasionally perform these activities. (*Id.* 26.) The ALJ stated that Ms. Mitchell's finding was "unsupported and not borne out in the treatment records," and that there was "no evidence to show that the claimant's physical impairments have worsened after the alleged onset date." (*Id.*)

I find that the reasons for rejecting these restrictions by Ms. Mitchell are invalid or not supported by substantial evidence. First, to the extent the ALJ found that Plaintiff's impairments have not worsened, this is a non-sequitur. Plaintiff was obviously in the worst shape on her onset date when she suffered life-threatening injuries in the car accident. The fact that her impairments did not worsen after that is not relevant to the weight to be given to medical opinion.

As for the finding that Ms. Mitchell's opinion regarding stopping, crouching and kneeling is "unsupported and not borne out in the treatment notes", I disagree and find that this is an improper lay judgment. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating

physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*'") (emphasis in original and quotation omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (an ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals).  While Ms. Mitchell's notes are not very detailed, they do note chronic problems including Plaintiff's head injury, and pain "in joint, shoulder" and "joint, lower leg".  (AR 408, 410, 414.)  They also show that Ms. Mitchell felt that Plaintiff's problems were significant enough that she chose to prescribe narcotics such as Oxycodone to treat her pain.  (*Id.* 409, 411, 415.)  Based on these findings, there is no basis for the ALJ to conclude that Ms. Mitchell's restrictions on crouching, stooping, and kneeling were unsupported.  Indeed, the restrictions appear to be reasonable for a person with chronic pain problems in their legs.[3]

I find that the failure to give adequate reasons for rejecting Ms. Mitchell's opinion in part is another basis for remand.  On remand, the ALJ should keep in mind that even though a nurse practitioner is not an acceptable medical source, information from such a source "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to

---

[3] The Commissioner's argument that Ms. Mitchell never actually tested Plaintiff's ability to stoop, crouch, and kneel is an improper post hoc rationale.  It is also not a proper basis to support the ALJ's decision as the ALJ accepted Dr. Hodge's opinion on Plaintiff's ability to stoop, crouch, and kneel without any evidence that Dr. Hodge tested these abilities.  The ALJ cannot have it both ways.  *See Teter v. Heckler*, 775 F.2d 1104, 1106 (10th Cir. 1985) (an ALJ cannot reject a medical provider's "reports as based on inadequate findings when they are comparable to those reports the ALJ found sufficiently detailed").

function." SSR 06-03p, 2006 WL 2329939, at *2-4.  An opinion from a non-acceptable medical source may even be entitled to greater weight than that of a treating physician. *Id.* at *5.

I next address the opinion of examining psychologist Dr. Rosenblum (AR 447-470.)  Dr. Rosenblum opined, among other things, that "the claimant's cognitive organizational difficulties would at best allow the claimant to do only extremely simple activities" with no multitasking which "may make her unemployable."  (*Id.* 448.)  Plaintiff is correct that the ALJ did not state what weight he assigned this opinion.  This was error, as an ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to'" the opinion.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted).  However, the ALJ's RFC specified that Plaintiff could understand, remember, and carry out only simple instructions.  Thus, it appears the ALJ may have given it at least some weight.

To the extent the ALJ s decision did not take into account all aspects of Dr. Rosenblum's opinion, including his opinion that Plaintiff should be limited to "*extremely* simple" tasks with no multitasking, the ALJ found that there is "minimal to no support in the record" for the opinion.  He stated in that regard that it is not supported by the narrative, Dr. Rosenblum's "opined 'B' criteria of mild limitations in social functioning and maintaining concentration, persistence and pace, or the specific assessment of functional capacity in which he opined the claimant has no more than moderate mental functional limitations in the ability to do unskilled, semi-skilled, and skilled work."  (AR 31.)  I find that these reasons are invalid and/or not supported by substantial evidence.

First, the narrative in Dr. Rosenblum's report discusses several impairments based upon his testing which are significant and supported his opinion. This includes at least a 15 point IQ loss due to head trauma, diminishing cognitive organization, and a marked reduction in Plaintiff's processing speed and ability to multi-task. (AR 448). These findings were substantiated by extensive testing with Plaintiff that documented brain damage (*id.*), including tests that were not performed by consultative examiner Dr. Lowell-Tupa. There is no evidence to support the ALJ's belief that Dr. Rosenblum's finding of mild limitations in social functioning and maintaining concentration, persistence and pace was inconsistent with his opinion limiting Plaintiff to only extremely simple tasks with no multitasking. To the extent the ALJ believed there was an inconsistency in this regard, he had a duty to contact Dr. Rosenblum to clarify this. *See* 20 C.F.R. § 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved") (in effect at the time of the ALJ's decision).

Also, the fact that Dr. Rosenblum found moderate mental functional limitations in the ability to work does not support the ALJ's decision to reject a portion of Dr. Rosenblum's opinion. The finding of a moderate impairment "'supports the conclusion that the individual's capacity to perform the activity is impaired,' POMS DI 24510.063 B.2. (boldface omitted), and therefore must be related with sufficient precision in a dispositive hypothetical to a VE and in an RFC finding." *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014).

Since I have found error with the weighing of Dr. Rosenblum's opinion regarding Plaintiff's mental impairments, this may well impact the weight to be given to consultative examiner Dr. Lowell-Tupa's opinion. I also, however, find error with the ALJ's treatment of her opinion.

While the ALJ gave "great weight" to Dr. Lowell-Tupa's opinion (AR 31), he rejected her finding that Plaintiff's ability to perform work-related tasks at an adequate pace was likely mildly to moderately impaired due to fatigue, and that Plaintiff could succeed in "in some fairly simple part-time work, but she may get too fatigued to work full time, due to her past brain injury." (*Id.* 445.) The ALJ stated that the findings were "unpersuasive", as they were not supported by the mostly mild findings." (*Id.*) He also stated that this opinion was "purely speculative and outside the psychologist's expertise." (*Id.*) The fact, however, that Dr. Lowell-Tupa found mild findings in other area does not provide support for the decision to reject her findings about the impact of fatigue on Plaintiff's ability to perform work related functions. A medical provider's statements about Plaintiff's condition or impairments "are specific medical findings" which the ALJ errs in rejecting in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Dr. Lowell-Tupa obviously credited Plaintiff's complaints of fatigue, and I find no error with this. "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished).

There is also no support for the ALJ's finding that the opinion is outside Dr. Lowell-Tupa's expertise or is speculation. It is reasonable to assume that a

-13-

psychologist would be trained in addressing how fatigue impacts a patient's ability to perform mental work related tasks, and I fail to see how this is speculation. Accordingly, the ALJ should reweigh these findings of Dr. Lowell-Tupa on remand and provide valid reasons for either accepting or rejecting them.

### 3. The Credibility Finding

While Plaintiff argues that the ALJ erred in connection with the credibility finding, I find no error. He acknowledged that the record demonstrates that Plaintiff's impairments could reasonably produce her symptoms, and that the "impairments cause her some discomfort and pain." (AR 28.) However, he found that Plaintiff's testimony regarding her subjective complaints was not fully persuasive. (*Id.*) He noted the appropriate factors (*id.* 27-28), and his findings are linked to substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

Thus, the ALJ reasonably considered the fact that, while the objective medical evidence supported some limitations, it did not show limitations consistent with the extent of Plaintiff's complaints (AR 29-32). *See* 20 C.F.R. § 404.1529(c)(4); SSR 96-7p, 1996 WL 374186, at *6-7. I also find that the ALJ was entitled to consider Plaintiff's statement regarding alcohol to Dr. Hodges (AR 30), as well as the fact that she received unemployment benefits in 2010 and 2011 (*id.* 28.) *See Moses v. Astrue*, No. 10-CV-2824-REB, 2012 WL 1326672, at *3 (D. Colo. Apr. 17, 2012) (unpublished) (citing cases).[4] Finally, the ALJ explicitly considered the third party statements and obviously

---

[4] The Chief ALJ memorandum cited by Plaintiff (Pl. Br. 22-23) does not preclude consideration of the receipt of unemployment benefits in assessing a claimant's credibility, but reaffirmed agency policy that receipt of such benefits was one of many factors that an ALJ may consider. (*See* ECF No. 15-6.)

found them to not be significantly probative.  I find no error in this.  *See Wall v. Astrue*, 561 F.3d 1048, 1064 n. 22 (10th Cir. 2009).

    4. <u>The Step Five Finding</u>

Plaintiff also argues that the ALJ failed to reconcile the vocational expert ["VE"] testimony at step five and the DOT.  In that regard, she notes the ALJ's finding that prior to her 50th birthday, she was not disabled because she could perform the jobs of "document preparer microfilming" and "addressor."  (AR. 33.) Neither the ALJ, nor the VE in his testimony, identified those jobs by their job title code numbers in the DOT.  Plaintiff asserts that those jobs are found under DOT code numbers 249.587-018 ("preparer, microfilm") and 209.587-010 ("addresser").  She contends that these jobs are not compatible with the ALJ's RFC findings, the VE's testimony to the contrary notwithstanding.  (*Id.* 504.)

Turning to my analysis, an ALJ must inquire about and resolve any conflicts between a VE's testimony regarding available jobs and the descriptions of those jobs in the DOT.  *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009); SSR 004-p, 2000 WL 1898704, at *4 (1989).  Thus, when the findings of the VE are in conflict with the DOT, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."  *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704, at *4 (2000).  When the ALJ fails to elicit such an explanation, the case must be reversed and

remanded to allow the ALJ to address the apparent conflict. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

In this case, the ALJ asked the VE whether his testimony conflicted with the DOT, and the VE testified that it did not. (AR 504.) However, I find the VE's testimony was not accurate, as the jobs do actually conflict with the DOT. The Commissioner has not disputed this and I find that a remand is required on this basis as well, even though the conflict was not raised until this proceeding. *See Hackett*, 395 F.3d at 1176.

Thus, the first job of "preparer, microfilm" requires a "reasoning" level of 3. The ALJ found that Plaintiff could perform jobs requiring that she understand, remember, and carry out only simple instructions. The Tenth Circuit has held that a job with a reasoning level of 3 cannot be performed by someone limited to performing simple job tasks. *Hackett*, 395 F.3d at 1176. The VE did not identify this discrepancy, and the ALJ did not address it or reconcile it in his decision. Moreover, both jobs the VE found Plaintiff could do require frequent reaching. The ALJ found that Plaintiff could never work above shoulder with dominant right upper extremity and could do no pushing, pulling or extended reaching with the dominant right upper extremity. Again, the VE did not identify this discrepancy, and the ALJ did not resolve it in his decision.[5]

Accordingly, I find that a remand is required for the ALJ to address the conflicts and elicit a reasonable explanation from the ALJ regarding same.

---

[5] To the extent the Commissioner relies on *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) in arguing that there was no error, I reject this argument. First, *Segovia* is an unpublished opinion and has no precedential value. Second, the issue in that case appeared to involve only an implied or indirect conflict between the VE's testimony and the DOT. Here, however, there was a *direct*, not an indirect, conflict.

I also direct the ALJ on remand to consider whether Plaintiff's age category before she turned 50 should have been mechanically in this case, *i.e,* whether this presented a borderline situation.  *See* 20 C.F.R. § 404.1563(b) ("If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."). The Tenth Circuit has found that when a claimant's age falls within the borderline period contemplated in § 404.1563(b), the mechanical application of the Grid Rules is prohibited and the failure to consider the issue is reversible error.  *Daniels v. Apfel*, 154 F.3d 1129, 1136 (10th Cir. 1998).

III.     CONCLUSION

Based upon the foregoing, I find that the ALJ erred at step three as he failed to obtain the opinion of a medical expert as to medical equivalence as required by Social Security Ruling 96-6p.  I also find that the ALJ erred in weighing some of the medical opinions.  Finally, I find that the ALJ erred at step five in not resolving conflicts between the VE's testimony regarding available jobs and the descriptions of those jobs in the DOT and in not considering whether Plaintiff's age fell within the borderline period contemplated in § 404.1563(b). Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated: March 31, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge